UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TAMMY BINGER,                          )    No. EDCV 08-0852-RC
                                       )
        Plaintiff,                     )
                                       )    OPINION AND ORDER
    v.                                 )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
        Defendant.                     )
_____)

     Plaintiff Tammy Binger filed a complaint on July 3, 2008, seeking
review of the Commissioner's decision denying her application for
disability benefits, and on November 12, 2008, the Commissioner
answered the complaint.  The parties filed a joint stipulation on
April 7, 2009.


                              **BACKGROUND**

                                  **I**

     On April 1, 2005, plaintiff applied for disability benefits under
the Supplemental Security Income program of Title XVI of the Social
Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an inability

1  to work since June 28, 2003, due to a broken tail bone, ankle
2  inflammation, sciatica, left leg numbness and adenomyosis.  Certified
3  Administrative Record ("A.R.") 80-82, 88.  The plaintiff's application
4  was initially denied on July 22, 2005, and was denied again on
5  November 10, 2005, following reconsideration.  A.R. 43-55.  The
6  plaintiff then requested an administrative hearing, which was held
7  before Administrative Law Judge Lowell Fortune ("the ALJ") on
8  February 9 and September 7, 2007.  A.R. 42-42A, 420-96.  On
9  September 28, 2007, the ALJ issued a decision finding plaintiff is not
10 disabled.  A.R. 14-27.  The plaintiff appealed this decision to the
11 Appeals Council, which denied review on May 27, 2008.  A.R. 4-6, 13.

12

13                                 II

14      The plaintiff, who was born on March 9, 1960, is currently 49
15 years old.  A.R. 80, 423.  She has a ninth-grade education, and has
16 previously worked as a waitress, stock clerk, and merchandiser.  A.R.
17 89-90, 323, 423, 427-28, 437-38, 486-90.

18

19      Between October 13, 2005, and August 8, 2007, plaintiff received
20 mental health treatment at the Riverside County Department of Mental
21 Health ("DMH").[1]  A.R. 211, 213, 260-318, 385-417.  On October 13,
22 2005, plaintiff was diagnosed with an unspecified depressive disorder
23 and a history of attention deficit hyperactivity disorder and
24 antisocial personality traits, and her Global Assessment of

25

26      [1]  Although plaintiff has both physical and mental
   complaints, she challenges only the ALJ's assessment of her
27 mental condition; therefore, the Court only summarizes the
28 medical records pertaining to plaintiff's mental state.

2

Functioning ("GAF") was determined to be 45.[2]  A.R. 300, 304.  On
December 7, 2005, Coney Ebro, M.D., examined plaintiff, diagnosed her
as having mixed bipolar disorder and intermittent explosive disorder,
determined plaintiff's GAF was 50, and prescribed medication for
plaintiff.  A.R. 307.

On September 15, 2006, Dr. Ebro determined plaintiff has poor
impulse control, is easily angered, has been isolated and withdrawn,
and is afraid of hurting other people.  A.R. 211.  Dr. Ebro opined
plaintiff cannot complete a forty-hour workweek without decompensat-
ing, and she cannot maintain a sustained level of concentration,
sustain repetitive tasks for an extended period, adapt to new or
stressful situations, or interact appropriately with family,
strangers, or co-workers, although she can interact appropriately with
supervisors and authority figures.  Id.

On February 1, 2007, Dr. Ebro found plaintiff has severe angry
outbursts and can be violent and hurt other people, but her aggressive
behavior is controlled with medication.  A.R. 213.  Dr. Ebro again
concluded plaintiff cannot complete a forty-hour workweek without
decompensating, and she cannot maintain a sustained level of
concentration, sustain repetitive tasks for an extended period, or
adapt to new or stressful situations.  Id.

---

[2]  A GAF of 41-50 means that the plaintiff exhibits
"[s]erious symptoms (e.g., suicidal ideation, severe obsessional
rituals, frequent shoplifting) or any serious impairment in
social, occupational, or school functioning (e.g. no friends,
unable to keep a job)."  American Psychiatric Ass'n, Diagnostic
and Statistical Manual of Mental Disorders ("DSM-IV-TR"), 34 (4th
ed. (Text Revision) 2000).

1    On May 24, 2007, Oluwafemi Adeyemo, M.D., a psychiatrist,
2    examined plaintiff and diagnosed her as having a recurrent severe
3    major depressive disorder with psychotic features, an unspecified
4    impulse control disorder, rule out dysthymic disorder and bipolar
5    disorder with psychotic features, and determined plaintiff's GAF was
6    55.[3]  A.R. 322-28.  Dr. Adeyemo opined:

7

8        [plaintiff] does not appear to have any restrictions of
9        daily activities at home but she has difficulty maintaining
10       social functioning outside her home environment.  She does
11       not appear to have significant difficulties with
12       concentration and is able to understand, retain and execute
13       simple and complex instructions.  She does not have [a]
14       history of emotional deterioration in a work environment.
15       [She] may have mild to moderate difficulties interacting
16       with co-workers and supervisors but should be able to
17       respond appropriately to usual work situations with
18       accommodations for her current symptoms (basically limiting
19       her interaction with co-workers and supervisors).  She . . .
20       appears to have moderate to mild difficulties interacting
21       with the public but her symptoms should improve with optimal
22       treatment.  There was no obvious evidence of ongoing
23       substance abuse.

24   //

25   _____
26       [3]  A GAF of 55 indicates "[m]oderate symptoms (e.g., flat
     affect and circumstantial speech, occasional panic attacks) or
27   moderate difficulty in social, occupational, or school
     functioning (e.g., few friends, conflicts with peers or co-
28   workers)."  DSM-IV-TR at 34.

1  A.R. 324.  Dr. Adeyemo further opined plaintiff's ability to under-

2  stand, remember, and carry out instructions is not affected by her

3  impairment, but she has:  a "marked "limitation in her ability to

4  interact appropriately with the public; "moderate" limitations in her

5  ability to respond appropriately to usual work situations and to

6  changes in a routine work setting; and a "mild" limitation in her

7  ability to interact appropriately with supervisors and co-workers.

8  A.R. 327.

9

10     Medical expert Dr. Michael Kania testified at the administrative

11  hearing, and opined plaintiff has an unspecified depressive disorder,

12  an intermittent explosive disorder, and anti-social personality

13  traits, and that none of these conditions meets or equals a listing.

14  A.R. 462-73.  Dr. Kania opined plaintiff has a "mild" restriction in

15  her activities of daily living, "moderate" difficulty maintaining

16  social functioning, "mild" difficulties maintaining concentration,

17  persistence or pace, and no episodes of decompensation.  A.R. 463.

18  Dr. Kania also opined plaintiff should be limited to a non-public job

19  with limited contact with other workers "[s]o, if she was working

20  independently or with one or two other people there probably would not

21  be any difficulty, but beyond that there might be."  A.R. 463-64.  Dr.

22  Kania reviewed the DMH records, and observed that plaintiff's response

23  to medication has been very positive, there was no problem with

24  impulse control, and "she was less agitated, less irritable, she had

25  better control and the auditory hallucinations, when they were

26  reported, are few and far between and don't seem to impair her

27  functioning at all."  A.R. 464-65.

28  //

1

**DISCUSSION**

2

**III**

3      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

4  review the Commissioner's decision denying plaintiff disability

5  benefits to determine if his findings are supported by substantial

6  evidence and whether the Commissioner used the proper legal standards

7  in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th

8  Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

9

10      "In determining whether the Commissioner's findings are supported

11  by substantial evidence, [this Court] must review the administrative

12  record as a whole, weighing both the evidence that supports and the

13  evidence that detracts from the Commissioner's conclusion."  Reddick

14  v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,

15  246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can

16  reasonably support either affirming or reversing the decision, [this

17  Court] may not substitute [its] judgment for that of the

18  Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007),

19  cert. denied, 128 S. Ct. 1068 (2008); Bray v. Astrue, 554 F.3d 1219,

20  1222 (9th Cir. 2009).

21

22      The claimant is "disabled" for the purpose of receiving benefits

23  under the Act if he is unable to engage in any substantial gainful

24  activity due to an impairment which has lasted, or is expected to

25  last, for a continuous period of at least twelve months.  42 U.S.C.

26  § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

27  burden of establishing a prima facie case of disability."  Roberts v.

28  Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

6

1  (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

2

3       The Commissioner has promulgated regulations establishing a five-
4  step sequential evaluation process for the ALJ to follow in a
5  disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
6  must determine whether the claimant is currently engaged in
7  substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
8  **Second Step**, the ALJ must determine whether the claimant has a severe
9  impairment or combination of impairments significantly limiting her
10  from performing basic work activities.  20 C.F.R. § 416.920(c).  If
11  so, in the **Third Step**, the ALJ must determine whether the claimant has
12  an impairment or combination of impairments that meets or equals the
13  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
14  404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
15  **Fourth Step**, the ALJ must determine whether the claimant has
16  sufficient residual functional capacity despite the impairment or
17  various limitations to perform her past work.  20 C.F.R. § 416.920(f).
18  If not, in **Step Five**, the burden shifts to the Commissioner to show
19  the claimant can perform other work that exists in significant numbers
20  in the national economy.  20 C.F.R. § 416.920(g).  Moreover, where
21  there is evidence of a mental impairment that may prevent a claimant
22  from working, the Commissioner has supplemented the five-step
23  sequential evaluation process with additional regulations addressing
24  mental impairments.[4]  Maier v. Comm'r of the Soc. Sec. Admin.,
25  154 F.3d 913, 914 (9th Cir. 1998) (per curiam).

26

27       Applying the five-step sequential evaluation process, the ALJ

28       [4]  See 20 C.F.R. § 416.920a.

1  found plaintiff has not engaged in substantial gainful activity since

2  the application date of April 1, 2005.  (Step One).  The ALJ then

3  found plaintiff has the severe impairments of:  a lumbar spine

4  disorder, a knee disorder, an unspecified depressive disorder, an

5  intermittent explosive disorder, now in remission, and antisocial

6  personality traits (Step Two); however, she does not have an

7  impairment or combination of impairments that meets or equals a

8  Listing.  (Step Three).  The ALJ next determined plaintiff cannot

9  perform her past relevant work.  (Step Four).  Finally, the ALJ

10  concluded plaintiff can perform a significant number of jobs in the

11  national economy; therefore, she is not disabled.  (Step Five).

12

13                                    IV

14      A claimant's residual functional capacity ("RFC") is what she can

15  still do despite her physical, mental, nonexertional, and other

16  limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

17  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

18  the ALJ found plaintiff has the RFC to perform:

19

20      sedentary work[5] in a non-public, habituated work setting

21      with limited contact with her co-workers, except she

22      requires an option to stand and stretch every 30 minutes and

23

24      5  "Sedentary work involves lifting no more than 10 pounds
25  at a time and occasionally lifting or carrying articles like
    docket files, ledgers, and small tools.  Although a sedentary job
26  is defined as one which involves sitting, a certain amount of
    walking and standing is often necessary in carrying out job
27  duties.  Jobs are sedentary if walking and standing are required
    occasionally and other sedentary criteria are met."  20 C.F.R. §
28  416.967(a).

1  is limited to occasional climbing of ramps or stairs,
2  occasional balancing, and occasional, not repetitive,
3  bending, stooping, or crouching.  The [plaintiff] is also
4  limited to less than occasional kneeling, and precluded from
5  climbing ladders, ropes or scaffolds, from crawling, or
6  working on uneven terrain.  She must avoid all excessive
7  noise and vibrations, dangerous, or fast moving machinery
8  and unprotected heights.
9
10 A.R. 20 (footnote added).  However, plaintiff contends the ALJ's
11 decision is not supported by substantial evidence because the ALJ did
12 not properly consider the opinions of her treating psychiatrist Dr.
13 Ebro or examining psychiatrist Dr. Adeyemo.  There is no merit to
14 these contentions.
15
16     The medical opinions of treating physicians are entitled to
17 special weight because the treating physician "is employed to cure and
18 has a greater opportunity to know and observe the patient as an
19 individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);
20 Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
21 1999).  Therefore, the ALJ must provide clear and convincing reasons
22 for rejecting the uncontroverted opinion of a treating physician, Ryan
23 v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick,
24 157 F.3d at 725, and "[e]ven if [a] treating doctor's opinion is
25 contradicted by another doctor, the ALJ may not reject this opinion
26 without providing 'specific and legitimate reasons' supported by
27 substantial evidence in the record."  Reddick, 157 F.3d at 725;
28 Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).  Similarly,

1  the ALJ "must provide 'clear and convincing' reasons for rejecting the
2  uncontradicted opinion of an examining physician[,]" <u>Lester v. Chater</u>,
3  81 F.3d 821, 830 (9th Cir. 1995); <u>Widmark v. Barnhart</u>, 454 F.3d 1063,
4  1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor,
5  the opinion of an examining doctor can be rejected only for specific
6  and legitimate reasons that are supported by substantial evidence in
7  the record." <u>Regennitter v. Comm'r of the Soc. Sec. Admin.</u>,
8  166 F.3d 1294, 1298-99 (9th Cir. 1999); <u>Ryan</u>, 528 F.3d at 1198.
9
10     Dr. Ebro opined plaintiff cannot complete a forty-hour workweek
11 without decompensating, and she cannot maintain a sustained level of
12 concentration, sustain repetitive tasks for an extended period, adapt
13 to new or stressful situations, or interact appropriately with family,
14 strangers, or co-workers, although she can interact appropriately with
15 supervisors and authority figures.  A.R. 211.  The ALJ rejected Dr.
16 Ebro's opinion, stating:
17
18     The doctor's opinion is without substantial support from the
19     other evidence of record, which obviously renders it less
20     persuasive.  Although the [plaintiff] has received on-going
21     treatment for her allegedly disabling symptoms, which would
22     normally weigh somewhat in the [plaintiff's] favor, the
23     record also reveals that the treatment has been generally
24     successful in controlling those symptoms.  She has had no
25     hospitalizations or crises since commencing treatment and
26     has shown improvement.
27
28 A.R. 24-25.  The ALJ's rationale is supported by substantial evidence

1  in the record, which shows, as Dr. Kania opined, that plaintiff has

2  responded positively to medication and she is able to control her

3  anger.  See, e.g., A.R. 260, 263, 289, 294.  Moreover, contrary to Dr.

4  Ebro, Dr. Adeyemo opined that plaintiff "does not appear to have

5  significant difficulties with concentration[,]" "does not have a

6  history of emotional deterioration in a work environment[,]" and

7  "should be able to respond appropriately to usual work situations.

8  . . ."  A.R. 324, 326.  "Inconsistencies between [treating and

9  examining physicians'] conclusions provided the ALJ additional

10  justification for rejecting [the treating physician's] opinion."

11  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

12  1999); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)

13  (ALJ properly rejected treating physician's opinion that was

14  contradicted by his own notes and was inconsistent with other

15  physicians' examination of claimant.); Tonapetyan v. Halter,

16  242 F.3d 1144, 1149 (9th Cir. 2001) ("The contrary opinions of [the

17  examining and nonexamining physicians] serve as . . . specific and

18  legitimate reasons for rejecting the opinion[] of [the treating

19  physician], and provide assurance that the record was sufficiently

20  developed with regard to the issue of physical impairment.").

21

22      Dr. Adeyemo also opined plaintiff has a "marked" limitation in

23  her ability to deal with the public; a "moderate" limitation in her

24  ability to respond appropriately to usual work situations and changes

25  in a routine work setting; and "mild" limitations in her ability to

26  interact appropriately with supervisors and co-workers.  A.R. 327.

27  More specifically, Dr. Adeyemo explained that plaintiff "should be

28  able to respond appropriately to usual work situations" if she has

11

1   only limited interaction with co-workers and supervisors.  A.R. 324.

2   Plaintiff contends, however, that "the ALJ failed to discuss or

3   mention . . . plaintiff's mild limitations" in her ability to interact

4   with supervisors and co-workers.  Jt. Stip. at 9:2-10:2.  The Court

5   disagrees.  As noted above, the RFC determination specifically limited

6   plaintiff to non-public work with limited contact with co-workers,

7   A.R. 20, which the ALJ further described as "working independently or

8   with one or two coworkers."  A.R. 493.  Therefore, "the RFC actually

9   incorporated the evidence that [the plaintiff] argues it ignored[,]"

10  and plaintiff's contention is without merit.  Valentine v. Astrue,

11  574 F.3d 685, __, 2009 WL 2138981, *4 (9th Cir. (Or.)).

12

13                                    V

14      At Step Five, the burden shifts to the Commissioner to show the

15  claimant can perform other jobs that exist in the national economy.

16  Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007); Widmark,

17  454 F.3d at 1069.  There are two ways for the Commissioner to meet

18  this burden: "(1) by the testimony of a vocational expert, or (2) by

19  reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R.

20  pt. 404, subpt. P, app. 2."[6]  Tackett v. Apfel, 180 F.3d 1094, 1099

21  (9th Cir. 1999); Widmark, 454 F.3d at 1069.  Moreover, the

22  ───────────────────

23      [6]  The Grids are guidelines setting forth "the types and
    number of jobs that exist in the national economy for different
    kinds of claimants.  Each rule defines a vocational profile and

24  determines whether sufficient work exists in the national
    economy.  These rules represent the [Commissioner's]

25  determination, arrived at by taking administrative notice of

26  relevant information, that a given number of unskilled jobs exist
    in the national economy that can be performed by persons with

27  each level of residual functional capacity."  Chavez v. Dep't of
    Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996)

28  (citations omitted).

1   Commissioner "must 'identify specific jobs existing in substantial
2   numbers in the national economy that [the] claimant can perform
3   despite her identified limitations.'"   Meanel v. Apfel, 172 F.3d 1111,
4   1114 (9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432
5   (9th Cir. 1995)).

6

7        Hypothetical questions posed to a vocational expert must consider
8   all of the claimant's limitations, Lewis v. Apfel, 236 F.3d 503, 517
9   (9th Cir. 2001), and "[t]he ALJ's depiction of the claimant's
10  disability must be accurate, detailed, and supported by the medical
11  record."   Tackett, 180 F.3d at 1101.   Here, the ALJ asked vocational
12  expert Sandra Fioretti the following hypothetical question:

13

14        [A]ssume an individual of the same age, education and work
15        experience as the claimant. . . .  I want you to assume an
16        individual with the following [RFC] based – exertionally at
17        sedentary, posturally this person is able to climb ramps and
18        stairs occasionally, but not ladders, scaffolds or ropes,
19        occasionally able to balance.  Now, in terms of bending,
20        stooping and crouching – no repetitive motions . . . on
21        either of those – accumulation can be occasionally up to a
22        third of the day.  Kneeling less than occasionally.
23        Crawling – no crawling.  And no walking on uneven terrain.
24        Environmentally – avoid all exposure to excessive vibration,
25        avoid all exposure to dangerous or fast moving machinery and
26        unprotected heights.  Mentally . . . non-public tasks. . . .
27        Limited contact with other workers, which means according to
28        the medical expert, working independently or with one or two

1    coworkers. . . .  Based on these circumstances[,] . . .

2    could this hypothetical person perform any other work in the

3    regional or in the national economy?

4

5    A.R. 492-93.  The vocational expert responded that such a person could

6    work as a buttons and notions assembler (Dictionary of Occupational

7    Titles ("DOT")[7] no. 734.687-018), with 900 job positions regionally

8    and 12,000 nationally, an optical assembler (DOT no. 713.687-018),

9    with 600 job positions regionally and 4,800 nationally, or an

10   agricultural sorter (DOT no. 521.687-086), with 450 job positions

11   regionally and 5,000 nationally.  A.R. 493-94.

12

13       The plaintiff contends, however, that the hypothetical question

14   to the vocational expert "fails to set out all of [her] particular

15   limitations and restrictions" as identified by Drs. Ebro and Adeyemo.

16   Jt. Stip. at 14:20-15:19, 16:21-25.  Since the ALJ's rejection of Dr.

17   Ebro's opinion is supported by substantial evidence, those limitations

18   need not be included in a hypothetical question to the vocational

19   expert.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001);

20   Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).  Moreover,

21   as discussed above, the hypothetical question to the vocational expert

22   accommodates the limitations found by Dr. Adeyemo.  Therefore, the

23   vocational expert's testimony constitutes substantial evidence to

24   support the ALJ's Step Five determination that plaintiff is not

25   //

26   //

27   ────────────────────

28       [7]  The DOT is the Commissioner's primary source of reliable
     vocational information.  Johnson, 60 F.3d at 1434 n.6.

1  disabled.   <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175-76 (9th

2  Cir. 2008).

3

4                                **ORDER**

5       IT IS ORDERED that: (1) plaintiff's request for relief is denied;

6  and (2) the Commissioner's decision is affirmed, and Judgment shall be

7  entered in favor of defendant.

8

9  DATE:  <u>August 31, 2009</u>            <u>/S/  ROSALYN M. CHAPMAN</u>
                                            ROSALYN M. CHAPMAN
10                                          UNITED STATES MAGISTRATE JUDGE

11  R&R-MDO\08-0852.mdo
    8/31/09

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28